# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARYLAND COMMISSIONER OF
FINANCIAL REGULATION,

    Plaintiff

v.

WESTERN SKY FINANCIAL, LLC,
GREAT SKY FINANCE, LLC,
PAYDAY FINANCIAL, LLC and
MARTIN A. WEBB,

    Defendants

Civil Action: 1:11-cv-00735-WDQ

**MEMORANDUM IN SUPPORT OF MARYLAND
COMMISSIONER OF FINANCIAL
REGULATION'S MOTION TO REMAND**

The Maryland Commissioner of Financial Regulation, by and through his undersigned counsel, and pursuant to 28 U.S.C. § 1447(c), submits the following in support of the Commissioner's Motion to Remand:

### I. BACKGROUND

**A. AGENCY OVERVIEW.**

The Maryland Department of Labor, Licensing, and Regulation ("DLLR") is a principal department of the Executive Branch of the Maryland State government. Md. Code Ann., State Gov't § 8-201(b)(13), Bus. Reg. § 2-101. The Commissioner of Financial Regulation (the "Commissioner") is a division (or unit) of DLLR (see Md. Code Ann., Bus. Reg. §§ 2-108(3),

Fin. Inst. § 2-101), and the Commissioner exercises the powers and performs the duties of the office subject to the authority of the Secretary of Labor, Licensing, and Regulation (Md. Code Ann., Fin. Inst. § 2-105). The Commissioner heads the Office of the Commissioner of Financial Regulation ("OCFR"), which has regulatory authority over both depository and non-depository financial institutions. See Md. Code Ann., Fin. Inst. § 2-101 *et seq.*; see also http://www.dllr.state.md.us/finance/, referenced at Md. Code Ann., State Gov't § 8-305. OCFR is thus an administrative agency within the Executive Branch of the Maryland State government. For purposes of this Motion and accompanying Memorandum, the terms "Commissioner," "OCFR," and "Agency" will be used interchangeably.

Among the Commissioner's responsibilities, the Maryland General Assembly has made the Commissioner, pursuant to the Maryland Consumer Loan Law ("MCLL") (at Md. Code Ann., Fin. Inst. § 11-201 *et seq.* and Md. Code Ann., Com. Law § 12-301 *et seq.*), responsible for regulating consumer lenders who make loans to Maryland residents. The MCLL gives the Commissioner licensing, investigatory, and enforcement regulatory authority, as well as authority to adopt pertinent rules and regulations. See, e.g., Md. Code Ann., Fin. Inst. §§ 11-201, 11-203, 11-204, 11-206, 11-214, 11-215, 11-216; Com. Law § 12-302.

B.    CASE HISTORY.

The present case stems from an investigation which OCFR conducted into the business activities of the Defendants. The Agency's investigation revealed that the Defendants marketed high-interest consumer loans to Maryland residents via, *inter alia*, internet and television advertising, and that as a result of such advertising, multiple Maryland consumers applied for loans from the Defendants by completing on-line loan applications using computers

2

while located in Maryland. See Commissioner's Summary Order to Cease and Desist and Order to Produce issued to the Defendants on February 15, 2011 (hereinafter, "Summary Order," at Exhibit 1); see also affidavit of Suzanne Elbon (hereinafter, "Elbon affidavit," at Exhibit 2), paras 4-5. The pertinent loan applications thus originated in Maryland. See Summary Order, paras 32, 35. The Defendants then entered into loan agreements with multiple Maryland consumers, and funded these loans by electronically transferring money into the consumers' bank accounts, which were located in Maryland. See Summary Order, paras 32-44; Elbon affidavit, para 5; see also Defendants' Motion to Dismiss, Exhibits 1-9 (Documents 4-4 through 4-11). The Defendants subsequently obtained payment on these consumer loans by withdrawing funds from the consumers' bank accounts via ACH (Electronic Funds Transfer) Authorization debit or check. See Summary Order; Elbon affidavit, para 4; Defendants' Motion to Dismiss, Exhibits 1-9.

The Agency's investigation thus demonstrated that the Defendants' business activities involving Maryland consumers had violated multiple provisions of the MCLL. The Defendants had made loans to Maryland residents without being duly licensed by the Commissioner as a consumer lender, they had engaged in usury by charging interest on the aforementioned loans far in excess of the rates permitted by State law,[1] and the Defendants had failed to comply with other applicable provisions of the MCLL, all to the determinant of Maryland consumers. See Summary Order, paras 45-51.

---

[1] The loans at issue involved annual interest rates well over 100 %, with some over 1,800 %, even though the MCLL limits the annual interest rate to 24 % or 33 % (depending both on the original principal balance of the loan and on the unpaid principal balance). See Summary Order, paras 32-49; Elbon affidavit, paras 5, 7.

3

Therefore, on February 15, 2011, after determining that it was in the public interest that the Defendants immediately cease and desist from making loans to, or otherwise engaging in lending activities with, Maryland consumers, and pursuant to the Commissioner's administrative authority under Md. Code Ann., Fin. Inst. §§ 2-115(a) and 11-215(b), the Agency issued the Summary Order to the Defendants (at Exhibit 1). This Summary Order constituted the commencement of the Agency's administrative action against the Defendants.

The Summary Order indicated that, within 15 days of its receipt, the Defendants were entitled to request a hearing to determine whether the Summary Order should be vacated, modified, or entered as a final Order of the Commissioner. The Summary Order was mailed to all Defendants by both certified and first class mail, and was signed for by the Defendants on February 18 and February 22, 2011 (see Exhibit 3). The Defendants then filed a motion on March 2, 2011 titled, "Special Appearance to Seek Dismissal for Lack of Jurisdiction and Request for a Hearing" (Exhibit 4). Counsel for Defendants was subsequently notified that a dismissal of the action would only be considered in the context of a full administrative hearing, but that their request would be treated as a timely hearing request by all Defendants in response to the Summary Order.

While the Agency was in the process of preparing paperwork to delegate authority to the Office of Administrative Hearings to conduct a full evidentiary hearing in the matter and to submit to the Commissioner proposed findings of fact, conclusions of law, and a proposed decision, the Defendants filed a Notice of Removal in the U.S. District Court for the District of Maryland, which was served electronically on March 21, 2011 (Document 1). The Agency subsequently stopped all administrative proceedings for the pendency of this action in federal

4

court. The Defendants subsequently filed a Motion to Dismiss, which was served on March 25, 2011 (Document 4). The Commissioner will file a separate Response in Opposition to the Defendants' Motion to Dismiss, in addition to the present Motion to Remand.

C.  **LEGAL SUMMARY.**

Pursuant to 28 U.S.C. § 1441(a), defendant(s) are permitted to remove a State court action to federal court if the case is one over which the U.S. district courts have original jurisdiction; this section states as follows:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Federal courts have original jurisdiction in three circumstances: (1) the parties are diverse and meet the statutory requirements for diversity jurisdiction set forth in 28 U.S.C. § 1332; (2) the face of the complaint raises a federal question (*i.e.*, a claim "arising under" federal law); or (3) the subject matter of a punitive state law claim has been totally subsumed by federal law such that the state law cannot even treat on the subject. Hensley v. Marion, 2011 WL 570252 (W.D.Va. 2011) (citing Barbour v. Intl Union, 2011 WL 242131 (4th Cir. 2011) (Agee, J., concurring) (quoting Lontz v. Tharp, 413 F.3d 435, 439-40 (4th Cir. 2005))); cf. Powers v. South Central United Food & Commercial Workers Unions and Employers Health & Welfare Trust, 719 F.2d 760, 763 (5th Cir. 1983) (stating that federal courts have "original jurisdiction" over cases involving diversity of citizenship between parties, because of claims arising under federal law, *or by virtue of some other explicit grant of jurisdiction*) (emphasis added)). Claims "arising under" federal law are those based on federal question jurisdiction under 28 U.S.C.

5

§1331, which states, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

However, the burden of establishing federal jurisdiction is placed on the party seeking removal. <u>Gottlieb v. Lincoln Nat'l Life Ins. Co.</u>, 388 F.Supp.2d 574, 576 (D.Md. 2005) (citing <u>Mulcahey v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994) (in turn citing <u>Wilson v. Republic Iron & Steel Co.</u>, 42 S.Ct. 35 (U.S. 1921))) (internal quotations removed). Further, because removal jurisdiction raises significant federalism concerns, courts must strictly construe removal jurisdiction. <u>Gottlieb</u>, 388 F.Supp.2d at 576; <u>Mulcahey</u>, 29 F.3d at 151. Therefore, if federal jurisdiction is doubtful, remand is necessary. <u>Gottlieb</u>, 388 F.Supp.2d at 576; <u>Mulcahey</u>, 29 F.3d at 151. "This strict policy against removal and for remand protects the sovereignty of state governments and state judicial power." <u>Gottlieb</u>, 388 F.Supp.2d at 576 (quoting <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 61 S.Ct. 868 (U.S. 1941)).

Procedures for remand, as well as the possibility of recovering costs and expenses, including attorneys fees, incurred as a result of removal, are set forth in 28 U.S.C. § 1447(c), which provides as follows:

> (c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446 (a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

## II. ARGUMENTS

This case was improvidently removed by the Defendants to federal court. There are multiple, independent reasons that this action should be remanded back to the Agency for further State administrative action, including the following:

A. **THIS COURT LACKS REMOVAL JURISDICTION, AS THE AGENCY IS NOT A "STATE COURT" FOR PURPOSES OF 28 U.S.C. § 1441(a).**

Among the other requirements specified in 28 U.S.C. § 1441(a), removal is only permitted for a "civil action brought in a State court." In the present matter, the Office of the Commissioner of Financial Regulation ("OCFR) is an administrative agency that is not a "State court" for purposes of removal under § 1441(a), and thus this Court does not have removal jurisdiction.

In order to determine whether an action before an administrative agency constitutes a "State court action" for purposes of removal under § 1441(a), Fourth Circuit district courts have generally applied the two-step "functional test," as follows: first, the court must evaluate the functions, powers, and procedures of the state tribunal in order to consider whether the entity functions as a court; second, the court must consider the respective state and federal interests in the subject matter and in the provision of a forum. See Gottlieb v. Lincoln Nat'l Life Ins. Co., 388 F.Supp.2d 574, 579-80 (D.Md. 2005) (remanding the case after applying the functional test and determining that the Maryland Insurance Administration was not a "State court" for purposes of § 1441(a)); Rockville Harley-Davidson v. Harley Davidson Motor Co., Inc., 217 F.Supp.2d 673, 676 (D.Md. 2002) (remanding after applying the functional test to the Maryland Department of Transportation, Motor Vehicle Administrative); Ginn v. North

Carolina Dep't of Corr., Div. of Prisons, 829 F.Supp. 804, 806-807 (E.D.N.C. 1993) (remanding after applying the functional test to the North Carolina Office of Administrative Hearings). Thus, "[t]he federal court should assume jurisdiction only if the agency functions as a court and federal interests predominate over state interests." Rockville Harley-Davidson, 217 F.Supp.2d at 676.

It should be noted that the U.S. Court of Appeals for the Fourth Circuit has not formally adopted this approach, and has applied it only in the context of federal officer removal under 28 U.S.C. § 1442 (which is to be broadly construed), as opposed to removal under 28 U.S.C. § 1441 (which is to be strictly construed). See Kolibash v. Committee on Legal Ethics of West Virginia Bar, 872 F.2d 571 (4th Cir. 1989) (broadly construing removal under § 1442(a)(1) in applying the functional test to West Virginia Committee on Legal Ethics); see also Sun Buick, Inc. v. Saab Cars USA, Inc., 26 F.3d 1259, 1262, 1264-65 (3rd Cir. 1994) (discussing the different standards applicable to removal under § 1441 and removal under § 1442 in distinguishing Kolibash from other federal courts applying the functional test, and then remanding a case involving the Pennsylvania Board of Vehicles because it was an administrative agency and not a "court" under the plain language of § 1441(a)). Thus it is still possible that the Fourth Circuit could reject the "functional test analysis" and instead adopt the "plain language" approach to interpreting "State court" under § 1441(a), as the Third and Ninth Circuits have done. See Oregon Bureau of Labor and Industries v. U.S. West Communications, Inc., 288 F.3d 414, 418 (9th Cir. 2002) (rejecting the "functional test" and adopting the Third Circuit's "plain language test" after finding that § 1441(a) contained clear and consistent statutory language, and then remanding a case involving the Oregon Bureau of Labor and

8

Industries, which was determined to be an administrative agency and not a "State court"); Sun Buick v. Saab, 26 F.3d at 1264, 1267 (adopting the plain language approach to interpreting § 1441(a) in remanding a case involving the Pennsylvania Board of Vehicles). Under this "plain language" approach to interpreting § 1441(a), federal courts would rarely, if ever, have removal jurisdiction involving Maryland State administrative agency cases, as such agencies generally do not meet the plain language definition of "court."

In the present matter, however, OCFR is not considered a "State court" for purposes of 28 U.S.C. § 1441(a), regardless of whether the "functional test" or the "plain language test" is applied to the Agency, and thus removal was improper. In applying the two-part functional test to OCFR, the analysis is virtually identical to that which Judge Bennett conducted in the Gottlieb case as to the Maryland Insurance Administration ("MIA"). 388 F.Supp.2d at 579-82. In Gottlieb, the court determined that both prongs of the functional test required remand of the case back to MIA for further State administrative action. Id.

Applying the first prong of the functional test to OCFR in the present case, it is apparent that, just as with MIA, OCFR lacks traditional judicial powers and therefore is "not the functional equivalent of a court." See Gottlieb, 388 F.Supp.2d at 580. Rather, the limitations on OCFR's adjudicative powers, just as with MIA, "render it more like a quintessential agency than the functional equivalent of a court." Id. at 581. For example, OCFR cannot enforce subpoenas through a contempt power, and instead must petition a state court for an order directing compliance with the subpoena and imposing appropriate penalties. See Md. Code Ann., Fin. Inst. § 2-114(c) (analogous to MIA's requirements under Md. Code Ann., Ins. § 2-203(b)(2), as discussed in Gottlieb, 388 F.Supp.2d at 580). Further, OCFR's decisions are

9

appealable to, or are subject to judicial review by, State circuit court. See Md. Code Ann., Fin. Inst. § 11-218, State Gov't § 10-222; Code of Maryland Regulations ("COMAR") 09.01.02.21; (analogous to MIA's requirements under Md. Code Ann., Ins. §§ 2-215, 27-306, State Gov't § 10-222, as discussed in Gottlieb, 388 F.Supp.2d at 580). Finally, in order to enforce its decisions, OCFR must bring a separate action in state circuit court. See Md. Code Ann., Fin. Inst. § 2-216, State Gov't § 10-222.1; (analogous to MIA's requirements under Md. Code Ann., Ins. § 2-201(a), State Gov't § 10-222.1, as discussed in Gottlieb, 388 F.Supp.2d at 580).

Additionally, OCFR can only provide limited remedies and relief. Thus while it can suspend or revoke licenses and make other licensing determinations, issue orders, impose penalties, and order limited restitution pursuant to Md. Code Ann., Fin. Inst. § 2-115, Com. Law §§ 12-313, 12-314 (analogous to the authority of MIA, as discussed in Gottlieb, 388 F.Supp.2d at 581), OCFR lacks the power to enforce any of its orders, instead being required to go to court pursuant to Md. Code Ann., Fin. Inst. § 2-216, and State Gov't § 10-222.1. OCFR's ability to issue injunctive-like relief is also severely limited, and the Agency is required to go to circuit court to obtain temporary restraining orders or temporary or permanent injunctions against any individual or business entity. See Md. Code Ann., Fin. Inst. § 2-216 (again analogous to that of MIA, as discussed in Gottlieb, 388 F.Supp.2d at 581). As such, the limitations on OCFR with regard to remedies and relief are virtually identical to those of MIA, which Judge Bennett found were insufficient to make the agency the functional equivalent of a court. Gottlieb, 388 F.Supp.2d at 581

The second prong of the functional test also weighs strongly in favor of remand, as the State's interests greatly predominate over any federal interests. The State's interests in the

present action are substantial, just as they were in Gottlieb, 388 F.Supp.2d at 581-82. OCFR is an administrative agency that regulates depository and non-depository financial institutions engaging in business activities involving Maryland consumers or Maryland residential real property. OCFR's regulatory authority includes, *inter alia*, licensing consumer lenders under the MCLL, investigating complaints related to persons making usurious or unlicensed loans to Maryland consumers, and bringing enforcement actions against persons for violating the MCLL. Subject to a hearing or waiver of a hearing, OCFR can suspend or revoke consumer lender licenses, issue final orders to cease and desist, issue fines and penalties, and order limited restitution to aggrieved persons. Thus, the State of Maryland has a substantial interest in the State's enforcement of the pertinent statute (here the Maryland Consumer Loan Law) through the administrative process, which strongly mitigates towards remanding the case (analogous to determinations made by federal trial courts in Woodruff v. Hartford Life Group Ins. Co., 378 F.Supp.2d 546, 551 (D.Md. 2005) and Gottlieb, 388 F.Supp.2d at 581-82). Moreover, the Agency's enforcement of the MCLL is particularly important to protect Maryland consumers against high-interest "payday loans" and other predatory lending practices, such as those at issue in the present action.

By contrast, the federal interest in the underlying dispute is slight (just as it was in Gottlieb, 388 F.Supp.2d at 582; see also, Rockville Harley-Davidson, 217 F.Supp.2d at 679-80). Each of the Agency's cause of action against the Defendants in the present matter is based on Maryland State law, and no issue of federal law is involved. The singular issue raised by the Defendants is that of tribal sovereign immunity which, as discussed below, is a defense that does not confer removal jurisdiction on a federal court. For all of these reasons, the federal

interest at stake in this dispute is "inadequate in light of the state's substantial interest in administering a state program and preserving the oversight role of a state agency." Gottlieb, 388 F.Supp.2d at 582 (citing Rockville Harley-Davidson, 217 F.Supp.2d at 680).

Based on the foregoing application of the functional test to OCFR in the present matter, it is clear that the Agency does not constitute a "State court" for purposes of removal under 28 U.S.C. § 1441(a). Likewise, the same result would also unquestionably occur if the Third and Ninth Circuits' "plain language test" was applied to OCFR. Under this approach, OCFR, which is a quintessential administrative agency, could not be considered a "State court" for purposes of § 1441(a) removal, and thus remand would be required.

Therefore, regardless of whether the "functional test" or the "plain language test" is applied to OCFR, the Agency cannot be considered a "State court" for purposes of removal under 28 U.S.C. § 1441(a). As such, this Court does not have removal jurisdiction, and the case should be remanded back to OCFR for further State administrative action.

**B. THIS COURT LACKS REMOVAL JURISDICTION, AS THE DEFENDANTS' CLAIMS OF TRIBAL SOVEREIGN IMMUNITY ARE STRICTLY A DEFENSE THAT DOES NOT TURN THE AGENCY'S STATE LAW CLAIMS INTO A FEDERAL CAUSE OF ACTION.**

This court also lacks removal jurisdiction because the basis for the Defendants' removal, the claim of tribal sovereign immunity, is a federal defense which is not a proper basis for removal. As the Supreme Court stated in Oklahoma Tax Com'n v. Graham, "it has long been settled that the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law." 109 S.Ct. 1519, 1521 (U.S. 1989) (citing Gully v. First National Bank, 57 S.Ct. 96 (U.S. 1936)). Moreover, the Graham court expressly stated that the possible existence of a tribal

sovereign immunity defense to a state's action for unpaid excise taxes did not cover the state's tax claims against an Indian tribe into federal questions so as to support removal to federal court. Oklahoma Tax Com'n v. Graham, 109 S.Ct. at 1521.

In the present action, as discussed in section I.B., supra, the Commissioner brought the current administrative action against Defendants based exclusively on violations of Maryland State law, namely violations of the Maryland Consumer Loan Law ("MCLL"). As such, just as in Graham, the Defendants' claims of tribal sovereign immunity in the present action do not convert the Commissioner's State law claims into federal questions so as to support removal. Further, the Defendants do not have an independent basis for original federal jurisdiction to support removal. It again follows that this Court does not have removal jurisdiction, and the case should be remanded back to the Agency for further State administrative action.

It should be noted that the Defendants have attempted to circumvent this dictum of black letter law (*i.e.*, federal defenses do not confer removal jurisdiction under § 1441(a)) by arguing that this is a State action against tribal members based exclusively on activities that occurred on a tribal reservation, and thus the State's administrative action is completely preempted by federal law. However, such arguments are completely disingenuous. It is clear from the Summary Order (Exhibit 1), as well as from the Elbon affidavit (Exhibit 2), that the agency brought the present action against based on the Defendants' contacts with Maryland and on their loan agreements with Maryland residents. The Defendants advertised in Maryland, Maryland consumers completed on-line loan applications from computers while located in Maryland (and thus the loan applications originated in Maryland), and funded loans were deposited into, and payments taken out of, bank accounts located in Maryland. These

13

consumers never left the State of Maryland for purposes related to these loan agreements, and they certainly never traveled to the Cheyenne River Reservation in South Dakota. See Elbon affidavit, para 5. It follows that this is not a case involving activities occurring on a tribal reservation, but rather implicates non-reservation activities involving the State of Maryland and Maryland residents; thus, the holding of Oklahoma Tax Com'n v. Graham, 109 S.Ct. at 1521, is clearly applicable to the present action. See also, Nevada v. Hicks, 121 S.Ct. 2304, 2311-12 (U.S. 2001) ("When on-reservation conduct involving only Indians is at issue, state law is generally inapplicable, for the State's regulatory interest is likely to be minimal and the federal interest in encouraging tribal self-government is at its strongest. When, however, state interests outside the reservation are implicated, States may regulate the activities even of tribe members on tribal land…") (internal citations omitted).

Therefore, as the defense of tribal sovereign immunity cannot confer removal jurisdiction on this Court, this case was improvidently removed by the Defendants to federal court, and the case should be remanded to the Agency for further State administrative action.

C. **EVEN IF THIS COURT DID HAVE JURISDICTION TO REACH THE MERTIS OF THIS ACTION, THE CASE SHOULD STILL BE REMANDED ON THE BASIS OF THE YOUNGER ABSTENTION DOCTRINE.**

Even assuming *arguendo* that this Court did have removal jurisdiction over this matter, the case must still be remanded on the basis of the Younger abstention doctrine. See Younger v. Harris, 91 S.Ct. 746, 754-55 (U.S. 1971) (prescribing abstention in state criminal actions); Huffman v. Pursue, Ltd., 95 S.Ct. 1200 (U.S. 1975) (extending the doctrine of Younger abstention to state civil proceedings). This doctrine holds that a federal court should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the merits, if

14

there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit. Moore v. City of Asheville, 396 F.3d 385, 390 (4th Cir. 2005) (citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 102 S.Ct. 2515 (U.S. 1982)). The Younger doctrine is rooted in federalism, and is principally concerned with the dual notions of equity and comity, Nivens v. Gilchrist, 319 F.3d 151, 153 (4th Cir. 2003) ("Nivens I"), as well as "the belief that the National Government will fare best if the states and their institutions are left free to perform their separate functions in their separate ways." Younger, 91 S.Ct. at 750. However, Younger is not merely a doctrine of abstention; rather, it sets forth a mandatory rule of equitable restraint. Nivens v. Gilchrist, 444 F.3d 237, 247 (4th Cir. 2006) ("Nivens II"). If the three-part test is satisfied, the Younger doctrine "contemplates … the presentation of all claims, both state and federal, to the state courts." Id. at 246-47 (citing Gibson v. Berryhill, 93 S.Ct. 1689 (U.S. 1973)).

Further, the Supreme Court has made clear that Younger abstention also applies to state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the defendant has a full and fair opportunity to litigate his constitutional claims. Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 106 S.Ct. 2718 (U.S. 1986); see also Middlesex County Ethics Comm, 102 S.Ct. 2515. Moreover, a necessary concomitant of Younger is that a defendant in a coercive state administrative proceeding must exhaust both his state administrative *and* judicial remedies (e.g., judicial review, appeals, etc.) *before* seeking review in the U.S. District Court. See Moore, 396 F.3d at

390; see also, Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 165-67 (4th Cir. 2008); New Orleans Pub. Serv., Inc. v. Council of New Orleans, 109 S.Ct. 2506 (U.S. 1989) ("NOPSI"); Huffman, 95 S.Ct. 1200.

In applying the three-part test to the present action, it is clear that this case should be remanded on the basis of Younger abstention. In fact, this Court has already applied the three-part Younger test to another case involving the Agency, where it was determined that abstention was required (invoking the "mandatory rule of equitable restraint"). See Ward v. Simpers, 2008 U.S. Dist. LEXIS 42172 (D.Md. May 29, 2008) (District Judge Bennett determining that Younger abstention was required with regard to an administrative action brought by the Commissioner under the Maryland Mortgage Lender Law). The same analysis that Judge Bennett discussed in Ward also applies to the present action.

With respect to the first prong of the Younger test, the Agency instituted an administrative action against the Defendants when the Agency issued the Summary Order on February 15, 2011 (at Exhibit 1). This was clearly issued prior to the date that the Defendants removed this action to federal court, and thus there was already a pending State administrative action at the time that the federal case was opened. Further, the administrative action in the present matter will involve an adversarial, trial like proceeding before the Office of Administrative Hearings ("OAH") prior to the Agency issuing a final administrative order (identical to the administrative procedures as discussed in Ward, 2008 U.S. Dist. LEXIS 42172 at 13-15). See the Agency's procedures for contested Agency hearings at COMAR Title 9, Subtitles 01 and 03; see also Maryland Administrative Procedure Act – Contested Cases (at Md. Code Ann., State Gov't § 10-201 et seq.). As such, just as was the case in Ward, these

proceedings constitute quasi-judicial proceedings that "investigate, declare, and enforce liabilities as they stand on present or past facts and under law supposed already to exist," thereby satisfying the first prong of the Younger test. See Ward, 2008 U.S. Dist. LEXIS 42172 at 13-14; see also, NOPSI, 109 S.Ct. 2506.

With regard to the second prong of the Younger test, this case involves an important and substantial State interest, namely enforcing Maryland's consumer protection laws applicable to persons making loans to Maryland consumers, namely the MCLL. As discussed supra, the State has a strong interest in enforcing the MCLL to ensure that State residents are not victimized by predatory lending practices, particularly those involving unlicensed and usurious lending to Maryland consumers. Moreover, just as was the case in Ward, only through State administrative proceedings, such as those which the Defendants have attempted to thwart in this matter by removing this action to federal court, can the State of Maryland protect its citizens from persons who transgress the statutory prohibitions enacted by the Maryland General Assembly, as well as the regulatory requirements imposed by OCFR – the State Agency charged with enforcement of the MCLL. See Ward, 2008 U.S. Dist. LEXIS 42172 at 17-18. The State's substantial interests in enforcing its consumer lending laws are clearly the type of important state interests envisioned by Younger and its progeny, and thus the second prong of the Younger test is satisfied in the present matter.

With regard to the third prong, just as was the case in Ward, the Defendants will have the opportunity to raise all of their constitutional defenses, including their defense of tribal sovereign immunity, at the State administrative hearing, as well as at any subsequent judicial review or appeal of the Agency's final order in this administrative action. See Ward, 2008 U.S.

Dist. LEXIS 42172 at 18-21 (noting that constitutional issues can be raised during the administrative process, as well as during any subsequent judicial review of the Agency's administrative action; also stating that Maryland courts are fully capable of deciding constitutional issues). As such, the Defendant will have a full and fair opportunity to litigate their constitutional claims, as required by <u>Ohio Civil Rights Comm'n</u>, 106 S.Ct. 2718, and thus the third prong of the <u>Younger</u> test is satisfied.

Based on the foregoing, all three prongs of the <u>Younger</u> test are fully satisfied in the present matter, and this Court should invoke the "mandatory rule of equitable restraint" and remand this case back to the Agency for further State administrative action.

### III.  CONCLUSION

This court lacks jurisdiction over this matter for two separate reasons: OCFR is not a "State court" for purposes of removal under 28 U.S.C. § 1441(a); and the Defendants' assertion of tribal sovereign immunity does not convert OCFR's enforcement action, brought under Maryland State law, into a federal cause of action justifying removal under § 1441. Therefore, as this Court lacks removal jurisdiction, remand of this action to the Agency for further State administrative action is required. Further, even assuming *arguendo* that this Court did have jurisdiction to decide this case on the merits (which in fact it does not), remand would *still* be required based on the <u>Younger</u> abstention doctrine.

WHEREFORE, the Maryland Commissioner of Financial Regulation respectfully requests that this Court remand the present case to the Agency for further State administrative action by entering the attached Proposed Order.

DOUGLAS F. GANSLER
Attorney General of the State of Maryland

   /s/ W. Thomas Lawrie

W. Thomas Lawrie
Assistant Attorney General
Federal Bar # 28226

Office of the Attorney General
Department of Labor, Licensing and Regulation
500 N. Calvert Street, Suite 406
Baltimore, Maryland 21202-3651
Phone No: 410-230-6115
Fax No: 410-333-6503

Attorneys for the Defendants